UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ERICK ROSENBERG,

                                  **Plaintiff,**

                **v.**                                            **1:17-CV-594**
                                                                       **(FJS/ATB)**

**TOWN OF NISKAYUNA, JEFFERY**
**RELATION, NICHOLAS PARDI, and**
**PAUL HOBSON,**

                                  **Defendants.**
_____

**APPEARANCES**                                          **OF COUNSEL**

**LUIBRAND LAW FIRM, PLLC**                **KEVIN A. LUIBRAND, ESQ.**
950 New Loudon Road
Latham, New York 12110
Attorneys for Plaintiff

**NAPIERSKI, VANDENBURGH,**               **SHAWN F. BROUSSEAU, ESQ.**
**NAPIERSKI & O'CONNOR, LLP**
296 Washington Avenue Extension
Albany, New York 12203
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff filed his complaint, asserting claims under 42 U.S.C. § 1983 and New York State law, against Defendant Town of Niskayuna and three of its police officers, Defendants Relation, Pardi and Hobson. *See* Dkt. No. 1, Complaint. Plaintiff's claims arise from an incident involving Officers Relation and Pardi's alleged use of excessive force against him on May 30, 2016. *See id.*

Pending before the Court is Defendants' motion for summary judgment. *See* Dkt. No. 23.

Plaintiff opposes the motion. *See* Dkt. No. 31.

## II. BACKGROUND

On May 30, 2016, Defendant Relation was stationed in the parking lot of a Dollar Tree in a police vehicle equipped with a license-plate reader. As Plaintiff drove past the Dollar Tree, Defendant Relation's license-plate reader indicated that Plaintiff's vehicle, a 2000 BMW 328i, had a suspended registration.

Defendant Relation activated his emergency lights and siren in an attempt to pull Plaintiff over. At this point, Defendant Relation's dash cam captured the events resulting in Plaintiff's arrest on film.[1] Plaintiff did not pull over but drove his vehicle back to his residence at 2054 State Street with Defendant Relation in pursuit. *See* Defendants' Motion for Summary Judgment at Exhibit "R" ("Video"). Plaintiff slowed to near-complete stops at most stop signs and turns on his way to his residence. *See id.* He also briefly drove in the wrong lane of travel to maneuver around a stopped vehicle. *See id.* Once Plaintiff entered his driveway and parked his car, Defendant Relation parked his vehicle adjacent to the rear driver's-side door of Plaintiff's car. *See id.* At first, Plaintiff tried to exist his vehicle through his driver's-side door but then closed that door as Defendant Relation approached his car. *See id.* Plaintiff then attempted to exit his vehicle once more through his driver's-side door, but Defendant Relation slammed the door closed. *See id.* Plaintiff then placed his left arm and head outside his window. *See id.* With Defendant Relation's left hand on Plaintiff's

---

[1] Defendant Relation's dash cam captured footage of events both inside and outside of his squad car. All citations to the video footage are to those events occurring outside of Defendant Relation's vehicle. Defendants submitted this video, which does not contain any sound, as Exhibit "R" to their motion for summary judgment.

-2-

left wrist and his right hand on Plaintiff's left, upper arm, Defendant Relation began to pull on Plaintiff's arm. *See id.* Once Defendant Relation ceased pulling on his arm, Plaintiff climbed out of his driver's-side window as Defendant Relation maintained his left hand on Plaintiff's wrist and his right hand on Plaintiff's left, upper arm. *See id.* After Plaintiff exited his vehicle, Defendant Relation twisted Plaintiff's left arm behind his back using both hands as he brought Plaintiff down to the ground. *See id.* At this point, Plaintiff is obscured from the dash cam until Defendant Relation briefly placed a handcuffed Plaintiff on the hood of the squad car. *See id.*

Plaintiff's left arm, which had sustained a serious injury to the nerve system that controls movement and sensation in his arm and hand during a motorcycle accident in 1992, was fractured during his arrest. Plaintiff admitted that he had consumed alcohol before Defendant Relation pursued him, and he ultimately pled guilty to a DWI.

### III. DISCUSSION

**A.    Summary judgment standard**

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden to demonstrate "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law" and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Selevan v. N.Y.*

*Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (noting that summary judgment is appropriate where the non-moving party "'fails to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quotation omitted)).

If the moving party meets this burden, the nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (quotation omitted). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003) (citation omitted). Nonetheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citation omitted). Moreover, "'[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted)).

**B.     Plaintiff's § 1983 claims**

Plaintiff alleges the following claims under § 1983: (1) excessive force against Defendants Relation, Pardi and Hobson, (2) cruel and unusual punishment against Defendants Relation, Pardi and Hobson, and (3) municipal liability against Defendant Town of Niskayuna. *See* Complaint at

¶¶ 35-44.

"Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of the right, privilege or immunity secured by the Constitution or the laws of the United States." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citations omitted). Section 1983 does not create any substantive rights; rather, it provides civil litigants with a procedure to redress the deprivation of rights established elsewhere. *See id.* (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985)) (other citation omitted). "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived him of a federal right." *Id.* (citations omitted)

### *1. Plaintiff's excessive force claims*

Defendants argue that Defendants Relation, Pardi, and Hobson did not use excessive force against Plaintiff on May 30, 2016. Specifically, they assert that

> [a]ll of the officers' use of force and conduct that evening was clearly reasonable under the . . . circumstances. Plaintiff was erratic, non-compliant and violent with the officers. He refused verbal orders, and continued to resist all attempts to place him under arrest. His reckless driving that evening displayed a complete disregard not only for his own safety, but also for the safety of the pursing officer and the public.

*See* Dkt. No. 23-25, Defendants' Memorandum of Law, at 12.[2]

In response, Plaintiff contends that the evidence shows that he "was fully compliant as he tried to exist through his vehicle's small window" and that "Defendant Relation continued to exert excessive

---

[2] All citations to page numbers in documents in the record refer to the page numbers that the Court's Electronic Filing System generates and which are located in the top right corner of the pages of those documents.

force on Plaintiff's arm until Plaintiff 'heard something snap' and 'felt like the bones [were] wanting to go right out of [his] skin.'" *See* Dkt. No. 31, Plaintiff's Memorandum of Law, at 16 (citing Ex. B, p. 25). Plaintiff further contends that "Defendant Pardi grabbed Plaintiff's useless, disabled, and now-broken left arm and forcefully twisted it to the small of Plaintiff's back, during the course of which he felt 'something go awry.'" *See id.* at 8 (citing Ex. I-1, p. 28).

The Supreme Court has held that "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989). A determination of reasonableness under the Fourth Amendment[3] "requires a careful balancing of'" the nature and quality of the intrusion on the individual's Fourth Amendment interests"' against the countervailing governmental interests at stake." *Id.* at 396 (quotation omitted). Thus, an excessive force claim "is subject to an objective test of reasonableness under the totality of the circumstances, which requires consideration of the specific facts in each case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000) (citing *Graham v. Connor*, 490 U.S. 386, 395-396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)) (other citation omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted). In addition, "[t]he calculus of reasonableness must embody allowance for the

---

[3] Plaintiff's Fourth Amendment claim is made applicable to Defendants, as state actors, through incorporation under the Fourteenth Amendment. *See Ker v. California*, 374 U.S. 23 ,30 (1983).

fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

In this case, Plaintiff has raised a genuine issue of material fact as to whether Defendants Relation and Pardi used excessive force against him. Although Plaintiff did not initially pull over once Defendant Relation activated his emergency lights and siren, the video does not reveal Plaintiff "driving recklessly through stop signs" or "speeding and traveling in the wrong lane of traffic." *See* Defendants' Memorandum of Law at 3, 9 (citations omitted). Rather, Plaintiff slowed to near-complete stops at most stop signs and turns on the way to his residence. *See* Video. He also briefly drove in the wrong lane of travel to maneuver around a stopped vehicle. *See id.* Although Defendants claim that Plaintiff "continued to resist all attempts to place him under arrest" and that he resisted arrest "violently," Defendants' Memorandum of Law at 11-12, Plaintiff testified that Defendant Relation told him "'he [was] going to take [him] out the window'" and further testified that he did not resist arrest, *see* Plaintiff's Memorandum of Law at 14, 19. Furthermore, Defendant Relation's dash cam shows him using both hands to pull Plaintiff from his car via the front, driver's-side window. *See* Video. It also shows him using both hands to twist Plaintiff's left arm behind his back as he brought Plaintiff down to the ground. *See id.* Yet, Defendant Relation knew Plaintiff had "a disabled left arm from a previous accident."[4] *See* Dkt. No. 23-3, Incident Report. Moreover, although Defendants Relation, Pardi, and Hobson claim that "[P]laintiff placed his left hand under his body in order to prevent himself from being handcuffed," *see* Defendants'

---

[4] "The reasonableness of the force used may be assessed in light of the officer's knowledge of a preexisting injury." *Sanchez v. Port Auth. of N.Y. & N.J.*, No. 08-CV-1028 (RRM) (CLP), 2012 WL 1068078, *9 (E.D.N.Y. Mar. 29, 2012) (citations omitted).

Memorandum of Law at 5 (citation omitted), Plaintiff states that Defendants Relation and Pardi "twisted [his] broken arm 180 degrees at the break point while handcuffing him," *see* Plaintiff's Memorandum of Law at 19 (citations omitted).

Accordingly, the Court finds that, viewing the evidence in the light most favorable to Plaintiff, a rational factfinder could conclude that the force Defendants Relation and Pardi used on Plaintiff was not objectively reasonable.[5] *See Brown v. City of N.Y.*, 798 F.3d 94, 103 (2d Cir. 2015) (concluding that "a jury will have to decide whether Fourth Amendment reasonableness was exceeded" when the plaintiff was taken to the ground by police officers); *Picciano v. McLoughlin*, 723 F. Supp. 2d 491, 505 (N.D.N.Y. 2010) (denying summary judgment on excessive force claim where "admissible record evidence exists from which a rational factfinder could conclude that [the] [d]efendant's application of force was objectively unreasonable in light of the facts and circumstances confronting him").

Alternatively, Defendants Relation, Pardi, and Hobson argue that they are entitled to qualified immunity because "[h]ere, it cannot be claimed that every reasonable officer would have concluded that all of the officers' actions violated [P]laintiff's Fourth Amendment rights." *See* Defendants' Memorandum of Law at 17; *see also* Dkt. No. 34, Defendants' Reply Memorandum of

---

[5] Plaintiff acknowledges that Defendant Hobson "did not place his hands on broken Plaintiff's arm[.]" *See* Plaintiff's Memorandum of Law at 21. Nonetheless, Plaintiff argues that Defendant Hobson is still liable for violating Plaintiff's Fourth Amendment rights because he "failed to intervene in the excessive force used by Defendants Relation and Pardi." *See id.* Defendant Hobson does not oppose this argument. The Court finds that a "genuine issue of material fact" exists as to whether Defendant Hobson is liable for failing to intervene in Defendants Relation and Pardi's excessive use of force against Plaintiff. *See Kavanaugh v. Vill. of Green Island*, No. 8:14-CV-1244 (DJS), 2018 WL 1033288, *6 (N.D.N.Y. Feb. 22, 2018) (observing that a law enforcement officer who "is present while an assault by fellow officers upon an [sic] detainee occurs may nonetheless bear responsibility for any resulting constitutional deprivation" (citation omitted)).

Law at 9-10.

"'Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'" *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007) (internal quotation marks omitted)); (other citation omitted). Defendants bear the burden of establishing qualified immunity. *See Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013) (citations omitted).

The qualified immunity inquiry proceeds in two parts. First, the court must determine whether a statutory or constitutional right was violated when the evidence is "viewed in the light most favorable to the plaintiff," and whether that statutory or constitutional right "was clearly established at the time of the alleged violation." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citations omitted). A constitutional right is "clearly established" when "'the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Mollica v. Volker*, 229 F.3d 366, 370 (2d Cir. 2000) (quoting *Anderson*, 483 U.S. at 640, 107 S. Ct. 3034).[6] The Second Circuit has found three factors relevant to this inquiry: (1) "the right in question [should be] defined with 'reasonable specificity'; (2) [Supreme Court and Second Circuit decisions] support the existence of the right in question; and (3) . . . under preexisting law a reasonable defendant official would have understood that his or her acts were

---

[6] Although this is the second prong of the qualified immunity analysis, the Supreme Court has relaxed the rigid order that *Saucier v. Katz*, 533 U.S. 194 (2001), prescribed and stated that district courts have discretion to consider either element of the qualified immunity claim first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

unlawful.'" *Id.* at 371 (quoting *Schechter v. Comptroller of the City of New York*, 79 F.3d 265, 271 (2d Cir. 1996) (quoting *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989))).

The Second Circuit has recognized a "general consensus" that an officer may not use force that could exacerbate "visible injuries" when the suspect is "cooperating in [the] arrest[.]" *Beckles v. City of N.Y.*, 492 F. App'x 181, 182 (2d Cir. 2012) (summary order) (citing cases involving officers handcuffing suspects who either have visible injuries or are cooperating in their arrests). "The determinative question therefore becomes 'whether under the preexisting law [Defendants Relation and Pardi] . . . would have understood . . . [their] acts [to be] unlawful.'" *Mollica*, 229 F.3d at 371 (quotation omitted). In this case, the Court answers this question in the affirmative. *See Jennings v. Jones*, 499 F.3d 2, 18 (1st Cir. 2007) (stating that "[w]hen an individual has been forcibly restrained by several officers, has ceased resisting arrest for several seconds, and has advised the officers that the force they are already using is hurting a previously injured ankle, we cannot think of any basis for increasing the force used to such a degree that a broken ankle results").

With regard to the second are of the qualified-immunity inquiry, there is a genuine issue of material fact as to whether Defendants Relation, Pardi, and Hobson violated Plaintiff's Fourth Amendment rights. Thus, the relevant question is whether it was objectively reasonable for them to believe that their actions did not violate that right. Considering the evidence in the light most favorable to Plaintiff, and crediting his testimony that he did not resist arrest after he pulled over, the Court cannot conclude that it was objectively reasonable for Defendants Relation, Pardi, and Hobson to believe that their actions were lawful. "[I]t is impossible to 'determine whether [Defendants] *reasonably* believed that [their] force was not excessive when several material facts [are] still in dispute, [and, therefore,] summary judgment on the basis of qualified immunity [is]

precluded.'" *Picciano*, 723 F. Supp. 2d at 505 (quoting *Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999) (emphasis added)).

### *2. Plaintiff's cruel and unusual punishment claim*

Although Plaintiff alleges that Defendants Relation, Pardi, and Hobson violated his Eighth Amendment rights during his arrest, it is well-settled that the Eighth Amendment only applies to individuals convicted of a crime. *See Graham*, 490 U.S. at 395 n.10. Furthermore, Plaintiff does not address Defendants' argument that the Court should dismiss his Eighth Amendment claim for cruel and unusual punishment. Therefore, the Court finds that Plaintiff has abandoned this claim. *See Cruz v. Wyckoff Heights Med. Ctr.*, No. 13-CV-8355 (ER), 2016 WL 5339540, *7 (S.D.N.Y. Sept. 23, 2016) (noting that "[c]ourts have regularly dismissed claims as abandoned where a plaintiff has failed to address them in opposing defendant's dispositive motions" (citation omitted)). Therefore, the Court grants Defendants' motion for summary judgment with regard to Plaintiff's Eighth Amendment claim.

### *3. Plaintiff's claim for municipal liability against Defendant Town of Niskayuna*

It is well-established that a plaintiff may not hold a municipality liable under § 1983 on the basis of *respondeat superior*. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978). Rather, municipalities are responsible only for "their *own* illegal acts," *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986), and are not vicariously liable for civil-rights violations that their employees perpetrate, *see Monell*, 436 U.S. at 691. In order to sustain a § 1983 claim for municipal liability, a plaintiff must show that he suffered a constitutional violation and that the

violation resulted from an identified municipal policy or custom. *See Monell*, 436 U.S. at 694-95. A municipal policy or custom may be established where the facts show the following: (1) a formal policy, officially promulgated by the municipality, *see id.* at 690; (2) action taken by the official responsible for establishing policy with respect to a particular issue, *see Pembaur*, 475 U.S. at 483-84; (3) an unlawful practice by subordinate officials so permanent and widespread as to practically have the force of law, *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-30 (1985); or (4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

Plaintiff argues that Defendant Town of Niskayuna is liable under § 1983 for violating his constitutional rights because it "failed to adequately train and supervise its employees on the proper method and manner in which to restrain and move an individual suffering from physical disability, and on the proper use of force when restraining an individual." *See* Complaint at ¶ 40. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly though of as a [municipal] 'policy or custom' that is actionable under § 1983." *Harris*, 489 U.S. at 389. A similar pattern of misconduct resulting from allegedly inadequate training is also "'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quotation omitted). Except in very rare cases, a "custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton v. City of N.Y.*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008) (footnote omitted); *see also Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002)

(noting that "[a] single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation" (citation omitted)). A municipality can only be found to be deliberately indifferent based on a single constitutional violation where "the unconstitutional consequences of failing to train [are] so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick v. Thompson*, 563 U.S. 51, 64 (2011). In other words, the municipality must put their employees in a situation with an "utter lack of an ability to cope with constitutional situations . . . ." *Id.* at 67.

Plaintiff has not demonstrated a similar pattern of misconduct resulting from the allegedly inadequate training of Defendant Town of Niskayuna's police officers. Thus, the question is whether this is one of those rare cases in which "the unconstitutional consequences of failing to train [are] so patently obvious." *Id.* at 64. This is not one of those cases. Defendant Town of Niskayuna has a policy that covers the use of force on restraining individuals, including those with disabilities. *See* Dkt. No. 23-19, 2006 Use of Force Policy.[7] The Use of Force Policy provides as follows:

> It shall be the policy of the Niskayuna Police Department that excessive physical force will not be used by any member against any individual for any reason. If it becomes necessary to use force, member will only use the force, *which is reasonable, under the circumstances*, to enforce laws, maintain control of prisoners and apprehend suspects as described in the following procedure.

*See id.* at 5 (emphasis added).

---

[7] Defendants submitted two copies of the Use of Force Policy, one from 2016 and one from 2006. The Court relies on the one issued in 2006 because the 2016 Use of Force Policy did not go into effect until August 2, 2016, more than two months after the date of the incident at issue in this case, *i.e.*, May 30, 2016.

The Use of Force policy clearly accounts for varying degrees of force, which the officer may be required to employ given the "circumstances." *Id.* Such circumstances include those in which "otherwise reasonable force used in handcuffing a suspect may be unreasonable when used against a suspect whom the officer knows to be injured[.]" *Beckles*, 492 F. App'x at 182.

Moreover, even assuming that Defendants Relation, Pardi, and Hobson had not been adequately trained on how to arrest individuals with disabilities, "for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury. Thus in the case at hand, [Plaintiff] must still prove that the deficiency in training actually caused the police officers' [violation of his Fourth Amendment rights]." *Harris*, 489 U.S. at 391 (footnote omitted). However, Plaintiff offers no evidence that the violation of his Fourth Amendment rights would have been avoided had Defendants Relation, Pardi, and Hobson been trained to arrest individuals with physical disabilities.[8] *See id.* Therefore, viewing the evidence in the light most favorable to Plaintiff, the court finds that a rational factfinder could not conclude that a policy or custom on the part of Defendant Town of Niskayuna caused the alleged constitutional violations in this case; and, therefore, the Court grants Defendants' motion for summary judgment with regard to Plaintiff's § 1983 claim for municipal liability against Defendant Town of Niskayuna. *See Jenkins v. City of N.Y.*, 478 F.3d 76, 95 (2d Cir. 2007) (stating that "[t]he mere fact that [the plaintiff] was falsely arrested, without more, does not show that the City's training program is inadequate. A training program is not inadequate merely because a few of its graduates deviate

---

[8] Plaintiff argues that, "[c]learly, this deficiency in Defendant Town's training and supervision caused the deprivation of Plaintiff's Fourth Amendment right to be free from excessive force[.]" *See* Plaintiff's Memorandum of Lat at 25. However, Plaintiff's "ipse dixit is not admissible evidence." *Slaitane v. Sbarro, Inc.*, Nos. 03 Civ. 5503 (AJP), 03 Civ. 5504 (AJP), 2004 WL 120315, *18 (S.D.N.Y. June 2, 2004).

from what they were taught").

**C.    Plaintiff's claims under New York State Law**

*1. Plaintiff's excessive force claims*

Defendants argue that Plaintiff's state law claims for excessive force fail for the same reason as his § 1983 claim for excessive force. *See* Defendants' Memorandum of Law at 13. Under New York State law, "[c]aims that law enforcement personal [sic] used excessive force in the course of an arrest, investigatory stop or other prearraignment seizure are analyzed under the 4th Amendment and its standard of objective reasonableness." *Passino v. State*, 260 A.D.2d 915, 916 (3d Dep't 1999) (citations omitted). Thus, for the same reason that the Court denied Defendants' motion for summary judgment with regard to Plaintiff's § 1983 excessive force claim against Defendants Relation and Pardi, it also denies Defendants' motion with regard to Plaintiff's state-law excessive force claim against Defendants Relation and Pardi. In addition, because Defendants failed to argue that, under New York State law, Defendant Hobson is not liable for failing to intervene in Defendants Relation's and Pardi's alleged use of excessive force on Plaintiff and that Defendant Town of Niskayuna is not liable for the alleged use of excessive force, the Court also denies Defendants' motion for summary judgment with regard to Plaintiff's state-law excessive force claims against Defendant Hobson and Defendant Town of Niskayuna.[9]

*2. Plaintiff's assault and battery claims*

---

[9] Unlike the case with § 1983 claims, Plaintiff may hold Defendant Town of Niskayuna liable for the acts of its employees under a theory of *respondeat superior* on his state-law claims. *See Cooper v. City of N.Y.*, No. 17 CV-1517 (NCG) (RLM), 2019 WL 3642996, *17 (E.D.N.Y. Aug. 5, 2019).

Defendants argue that Plaintiff's state-law claims for assault and battery fail for the same reason as his § 1983 excessive force claims. *See* Defendants' Memorandum of Law at 15-16; Defendants' Reply Memorandum of Law at 10. "'[E]xcept for § 1983's requirement that the tort be committed under color of state law, the essential elements of [excessive force and state law assault and battery claims are] substantially identical.'" *Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009) (summary order) (quoting *Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991)); *see also Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 263 (N.D.N.Y. 2014) (stating that, "[e]ssentially, the Fourth Amendment excessive force standard applies to assault and battery claims against a police officer under New York law" (citation omitted)). Since there is a genuine issue of material fact as to whether Defendants Relation and Pardi used excessive force in violation of § 1983, the Court denies Defendants' motion for summary judgment with regard to Plaintiff's assault and battery claims against those Defendants. Likewise, because Defendants have failed to argue that, under New York State law, Defendant Hobson is not liable for failing to intervene in Defendant Relation's and Defendant Pardi's alleged assault and battery of Plaintiff and that Defendant Town of Niskayuna is not liable for the actions of Defendants Relation, Pardi, and Hobson under a theory of *respondeat superior*, the Court denies Defendants' motion for summary judgment with regard to Plaintiff's assault and battery claims against those Defendants as well.

### *3. Plaintiff's negligence claim*

Defendants argue that Plaintiff's negligence claim must fail because "no reasonable finder of fact could determine that the police officer[s'] contact with [P]laintiff was anything but intentional." *See* Defendants' Memorandum of Law at 16; Defendants' Reply Memorandum of Law at 11.

"When a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." *Naccarato v. Scarselli*, 124 F. Supp. 2d 36, 45 (N.D.N.Y. 2000) (citations omitted). Plaintiff has only adduced evidence that Defendants Relation, Pardi and Hobson acted intentionally towards him. *See, e.g.*, Plaintiff's Memorandum of Law at 6 (alleging that Defendant Relation "forcefully grabbed" Plaintiff when he pulled Plaintiff through the front driver's-side window; *id.* at 8 (alleging that Defendant Pardi "grabbed" left arm and "forcefully twisted it to the small of Plaintiff's back"); *id.* at 17 (alleging that Defendant Hobson "arrived on scene and began holding Plaintiff's legs down"). Therefore the Court grants Defendants' motion for summary judgment with regard to Plaintiff's negligence claim. *See Lee v. Cty. of Onondaga*, No. 5:13-CV-1285-BKS-TWD, 2016 WL 9441472, *8 (N.D.N.Y. Aug. 19, 2016) (dismissing a plaintiff's negligence claim because "at all times [the] [p]laintiff has alleged that Sergeant Murphy and Deputy Willis acted intentionally"); *Hansel v. Sheridan*, 991 F. Supp. 69, 76 (N.D.N.Y. 1998) (holding that, "[b]ecause plaintiff has brought excessive force and assault and battery claims addressing defendants allegedly unlawful use of force, the negligence claim must be dismissed (citations omitted)); *Mazzaferro v. Albany Motel Enters., Inc.*, 127 A.D.2d 374, 376 (3d Dep't 1987) (stating that "New York has adopted the prevailing modern view that, once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently" (citations omitted)).

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and the applicable

law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment, *see* Dkt. No. 23, is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with regard to the following claims: (1) Plaintiff cruel and unusual punishment claims against Officers Relation, Pardi and Hobson under § 1983; (2) Plaintiff's municipal liability claim against Defendant Town of Niskayuna under § 1983; and Plaintiff's state-law negligence claims against all Defendants; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED** with regard to the following claims: (1) Plaintiff's excessive force claims against Defendants Relation, Pardi and Hobson under § 1983; (2) Plaintiff's state-law excessive force claims against all Defendants; and (3) Plaintiff's state-law assault and battery claims against all Defendants; and the Court further

**ORDERS** that a telephone conference with the Court will be held on **September 19, 2019**, at **10:00 a.m.** to set a trial date for the remaining claims in this action. The Court will provide counsel with the conference telephone call information prior to the date of the conference.

**IT IS SO ORDERED.**

Dated: September 4, 2019
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge